## NORTON AND OTHERS *vs.* HICKOK AND OTHERS.

A. and B. had severally attached certain personal property of C., their common debtor, the attachment of A. having precedence, and both had obtained judgment against C. in the suits so brought, the property being, however, insufficient to satisfy either judgment. On a petition in chancery brought by B. against A., praying that A. be enjoined against levying his execution on the property, it having been found by the court, that B's judgment was based on a just and legal claim, but that A's judgment, though nominally based on a payment of money for C., was yet founded wholly on a liability of A. to a bank, as maker of a note endorsed by C. and by one F., and which C. had agreed but had failed to pay, and that the object of A. in bringing the suit, was to secure to himself and to F. an indemnity for such liability; it was held, that the judgment of A. being founded on no legal indebtedness, his lien ought to be postponed to that of B.; and that, as the property attached was insufficient to pay B's judgment, the injunction prayed for ought to be granted.

The statute of 1846 (Rev. Stat., tit. i., sec. 59,) which provides, that creditors of a debtor whose property has been attached, may appear in the suit, and contest the same, was not intended to affect any previously existing rights of such creditors, but to furnish an additional remedy.

And the legal remedy thus furnished, constitutes no objection to equitable relief.

THIS was a bill in chancery, praying for an injunction against the levy of an execution, issued upon a judgment of the superior court, in favor of George A. Hickok and William C. Hickok, against Edward Stapleton, upon certain shares of the Pahquioque bank, which had been attached by the plaintiffs.

The cause in the superior court was referred to a committee, whose report embraced the following facts.

On the 15th day of July, 1854, the plaintiffs brought their action against Stapleton; attached, as his property, fifty shares of the stock of the Pahquioque bank; and afterwards, in the superior court, recovered judgment against him for the sum of $8,111.79 damages, and their costs; which judgment so recovered, was found to be for a just and *bona fide* debt.

On the day preceding the plaintiffs' attachment, the Hickoks brought their action against Stapleton; attached the same bank shares, and afterwards, before the superior court for Fairfield county, at the February term, 1855, recovered judgment against him for the sum of $4,000 damages, and their costs, and were about to levy their execution upon the bank shares which they had attached, when the plaintiffs' suit against them was brought, and they were restrained by a temporary injunction.

In reference to the validity of the judgment in favor of the Hickoks, it was found, that in the year 1853, Norton, one of the plaintiffs, being a special partner of Stapleton, carrying on business with him in the name of E. Stapleton, discovered upon the books of the firm, a large balance due from the Hickoks, exceeding in amount $12,000, and insisted that the balance should be reduced. Accordingly, Stapleton, on the 15th of December of that year, procured from them two promissory notes, one for $2,500, payable in three months, and the other for $2,590, payable in four months, and both made payable to one Farnam. These notes were endorsed by Farnam and Stapleton, and discounted at the Hatters' bank in Danbury, and the proceeds credited to the Hickoks on the books of E. Stapleton.

Stapleton, who was a secret partner of the Hickoks, a fact

not known to Norton, afterwards, in the month of January following, made an arrangement with the Hickoks respecting their partnership dealings, by which he agreed to assume the payment of those two notes. But they were renewed at the bank from time to time, by the substitution of other notes made by the same parties. The last note given for the debt created by the discount of the first-mentioned note, was dated March 15, 1855, for $2,500, payable in three months, and when it became due was protested for non-payment. The last note given for the debt created by the discount of the last-mentioned of the two notes, and having the same endorsers, was dated February 23, 1855, for the sum of $2,600, payable in three months after its date. Before this note became due, and after the Hickoks had obtained their judgment, it was taken up from the bank by another note, endorsed by Farnam alone. It was not found that either of these debts to the Hatters' bank had been paid by any of the parties to the notes.

Before the attachments were made, and while the plaintiffs were in the act of securing their claims, Stapleton, being aware of the fact, and being also deeply insolvent, sent a power of attorney to the bank for the transfer of his stock, but omitting to send with it his certificate, the president of the bank refused to make the transfer. He thereupon immediately sent word to William C. Hickok, to attach the stock, which he did, in the manner hereinbefore stated.

At the time of the rendition of the judgment in favor of the Hickoks, the following bill of particulars was filed.

" Edward Stapleton

" To G. A. & W. C. Hickok, Dr.

" 1854, March 18, To money paid,     $2,500
"   "    April 18, To money paid,     1,500

                                 $4,000 "

It was further found, that the suit in favor of the Hickoks was brought to secure for themselves, and through them for the said Farnam, an indemnity against the payment of the two notes amounting to $5,100, and for no other purpose,

and that beyond that there was no actual fraud. The value of the stock was found to be $2,400.

The superior court for the county of Fairfield, at the August term, 1856, reserved the questions of law arising upon the record in this case, for the advice of this court.

*Hawley* and *Averill*, for petitioners.

The petitioners seek to make their own unquestionable claim available against a false and spurious claim of defendants. *Pierce* v. *Jackson*, 6 Mass., 242. A judgment may be impeached for fraud, actual or constructive, as well as a conveyance.

The agreement between defendants and Stapleton was illegal, opposed to public policy, tended to defraud Stapleton's partners, who had no knowledge of it, and could furnish no consideration for any promise by Stapleton to pay the debts of the Hickoks, and could lay the foundation for no claim of the latter against him; especially as against the petitioners. Story on Part., sec. 174, 177.

But aside from this consideration, there was no foundation for the judgment of the defendants in any form of action; especially in *indebitatus assumpsit* for money paid.

The debts they claim Stapleton agreed to pay, were never at all his debts, but always the debts of the defendants. The defendants were never Stapleton's sureties, but he was theirs.

They have never paid either of those debts, nor any part of them, nor ever exonerated Stapleton from his liability on either until after the judgment recovered on one only.

They could not recover without having paid. *Ayres* v. *Husted*, 15 Conn. R., 504, 512. Chit. on Cont., 591. *Hotchkiss* v. *Downes*, 2 Conn. R., 136. *Savage* v. *Lyon*, 10 John., 32. *Little* v. *Little*, 13 Pick., 426.

But it is expressly found that the action was not brought for moneys paid, but for indemnity merely, before any payment had been made; and indemnity, too, for another endorser.

The bill of particulars shows the falsity of the claim. There is no pretense that they have ever even constructively paid the $1,500, though they have taken judgment for the whole $4,000.

*Dutton* and *White,* for respondents.

The injunction in this case ought not to be granted; because,

I. The respondents' judgment was a valid judgment.

1st. The suit was brought at the request of Stapleton. The bringing of the suit under the circumstances, with an understanding that the plaintiffs were to take judgment, amounted to an assumption of the debt to the Hatters' bank by the Hickoks, which Stapleton was bound to pay; and this created an indebtedness of Stapleton to the Hickoks.

2d. If it was not, strictly speaking, a debt from Stapleton to the Hickoks, Stapleton would have had a perfect right on a trial, not to object to the admitted facts as evidence in favor of the plaintiffs.

3d. The settlement between the Hickoks and Stapleton was a *bona fide* settlement; and Stapleton, having received the benefit of it, by the payments made by the Hickoks, could not deny his liability. The subsequent failure of the firm in which Stapleton was concerned, would not affect this settlement.

4th. It is legal and proper to secure a party for a liability, by the confession of a judgment. It is a common practice in New York to give such securities. The precise point was decided in the case of *Ford* v. *Elkin,* 2 Speer's R., 146.

II. The petitioners had adequate remedy at law. The statute provides that a creditor may appear and defend. The petitioners knew of the pendency of the suit, and that the stock in question was attached, and are presumed to know the law.

III. The petitioners have no better equity than the respondents.

1st. If the claim on which the respondents' judgment was

founded was not technically an indebtedness of Stapleton, yet it was a highly equitable claim.

2d. The Hickoks had agreed to take up one of the notes at the Hatters' bank, before the judgment was rendered. Stapleton, at that time, was utterly insolvent. They actually paid more than the stock which was attached was worth, before this petition was brought. Equity regards that as done which is agreed to be done. It would be highly inequitable to prevent the respondents from holding their judgment for at least the amount of what was paid.

3d. While the parties have equal equities, the respondents have also the legal title. When a party has both the legal and equitable right, he is always preferred in chancery. 2 Sw. Dig., 201. 1 Fonb. Eq., 321, 352. 2 do., 484.

WAITE, C. J. The question in this case is, which of the two parties, judgment creditors of Edward Stapleton, is entitled to a priority of lien upon his property by virtue of their respective attachments.

The defendants' attachment was first made, but the plaintiffs' claim is that it is invalid as against their lien, because the suit was not founded upon any indebtedness of Stapleton.

The committee have found that the judgment in favor of the plaintiffs was rendered for a just and *bona fide* debt. The record, in the defendants' case, shows that their judgment was founded upon a claim for moneys paid by them to the amount of $4,000, as set forth in their bill of particulars, filed in the case, and the report of the committee shows that no such moneys have ever been paid by them.

Were there nothing more in the case, it is clear that a judgment so obtained would be of no validity as against a judgment of a *bona fide* creditor of Stapleton; and that, upon these facts alone, the plaintiffs would be entitled to the protection they ask.

But the committee have further found that the defendants' judgment was not in fact founded upon the claim set forth

in their bill of particulars, but upon their liability to the Hatters' bank as makers of two promissory notes, amounting to the sum of $5,100, upon which Farnam and Stapleton were endorsers, and which the latter had agreed to pay; and that their object in bringing their suit, was to secure to themselves and to Farnam an indemnity for their liability on those notes.

It is very evident that this claim is a very different one from that shown by the record. But does this claim place their judgment in any better situation, or give to it any greater efficacy, as against the plaintiffs?

The debts contracted at the Hatters' bank were originally for the discount of two promissory notes, made by the Hickoks, upon which Stapleton was no otherwise liable than as their endorser, and perhaps as a secret partner with them in their business. These debts to the bank remained as they originally were, down to the time of the attachment of the defendants, and even down to the time of the rendition of the judgment in their favor, with the exception of the substitution of new notes at the bank, with the same names as makers and endorsers, in the place of prior ones, as they respectively became due.

The Hickoks had paid nothing on account of their liability to the bank, and consequently had created no indebtedness in their favor against Stapleton, and by possibility never might. Stapleton was bound to them by his agreement to assume and pay the bank debts, but was not indebted to them in any specific debt, as he remained liable to the bank as an endorser of those notes.

It is further claimed, that the plaintiffs can not sustain their bill, as they had adequate remedy at law; that we have a statute in this state, which authorized the plaintiffs, as the attaching creditors of Stapleton, to appear in, and defend the suit against him, in favor of the Hickoks, and that they can not now impeach a judgment, the recovery of which they might have prevented, if their claim is well founded.

That statute, however, is a recent enactment,* and was not intended to take away or impair any right which an attaching creditor previously had, but only to afford him an additional remedy, and perhaps one more expeditious and less expensive. It was therefore optional with the creditors, to avail themselves of the provisions of that statute, or rely upon their equitable and legal rights, as they existed before the statute was passed.

The Hickoks, having failed to show any just or valid debt, as the foundation of their judgment against Stapleton, are not entitled to that priority of lien upon his property which the law would otherwise give them; and as the value of the bank shares is found to be much less than the amount of the plaintiffs' judgment, we are of opinion that they are entitled to the relief prayed for in their bill, and so advise the superior court.

In this opinion, the other judges, STORRS and HINMAN, concurred.

Decree for petitioners advised.

* Passed in 1846. Rev. Stat., tit. i., sec. 59.